Mr. McClain. Thank you, Your Honor, and may it please the Court. My name is Kevin McClain and I'm Associate General Counsel for Weis Builders, the defendant and appellant in this case. Also with me today is Weis Builders General Counsel, Mr. Glenn Burrage. And with Mr. Burrage's oversight, I drafted the appeal brief in this case, so he's deferred to me for oral argument here today. So if it's not good, we should blame him? Exactly. This is a case about two commercial construction companies that entered into two written subcontract agreements involving the performance of over $3 million worth of work on a new Walmart Supercenter project in Lockport, Illinois. Each of those written subcontracts contained an arbitration provision giving my client, the general contractor, the right to elect arbitration of disputes with the subcontractor. Now those arbitration provisions included a provision that stated that the arbitration would take place in Hennepin County, Minnesota, which is the Minneapolis area. We're here today because the subcontractor, R.A. Bright, ignored my client's election to arbitrate a subcontract dispute and instead continued with the lawsuit in the circuit court of Earl County. Now Weis Builders responded to that lawsuit by immediately filing a motion to compel arbitration, but unfortunately without providing any written factual or legal findings, the trial court denied Weis Builders' motion. We're here today asking this court to overturn that order. Now before I dive into my argument today, I'd just like to highlight that the standard of review for this appeal is the no vote, so this court stands on equal footing with the trial court to decide all issues in the case. Now I want to spend most of my time here today just highlighting two key points. Number one, the federal arbitration act applies. It is the supreme law of the land, and it therefore preempts the Illinois Building and Construction Contract Act under the United States Constitution. The federal arbitration act applies to all contracts involving interstate commerce, and so I submit that the first question that this court should consider today is what connections between the subcontracts and interstate commerce are required in order to invoke the federal arbitration act. And the answer to that question is that the connections between the contracts and commerce need not be very extensive. The scope of Congress's commerce power under the United States Constitution is extremely broad, so even commercial activities that might appear on their face to be purely local and intrastate can be reached out and touched by the Congress's commerce power. And of particular relevance to this case, the Supreme Court has held that the federal arbitration act exercises Congress's commerce power to the full. And so when determining if the federal arbitration act applies in this case, Weiss Builders submits that this court should take a very broad view of the meaning of the words interstate commerce. Now by way of example in Weiss Builders' brief, we cited the three cases from other jurisdictions in which construction contracts were analyzed for their connections with interstate commerce. And in each of those cases, just a few connections between the contracts and interstate commerce were found to be more than sufficient to invoke the federal arbitration act. Now in this case, there are actually a multitude of connections between the subcontracts and interstate commerce. And I'd like to highlight seven of those connections here today. First, Weiss Builders and Ari Breit, the parties to this case, are from different states. In fact, this court wouldn't have even needed to open up the briefs to discover that Ari Breit is an Illinois corporation and Weiss Builders is a So just by virtue of the fact that these two companies entered into a contract together, they've engaged in interstate commerce. Secondly, the owner of this project is Wal-Mart Stores Incorporated, and that's a multinational corporation that's based in Arkansas. And I'd just like to point out that if you read each of Ari Breit's subcontracts, you'll find multiple provisions within it in which Ari Breit assumed obligations directly for the benefit of Wal-Mart. And just one of those obligations was that Ari Breit agreed to indemnify and defend Wal-Mart in the event of personal injury or property damage claims arising from its work on the project. So it committed certain obligations directly to Wal-Mart and therefore has a connection with that Arkansas corporation. Third, the subcontractors and suppliers that furnished labor and materials to this project came from more than a dozen different states all across the U.S. They're from states as far east as New York and Connecticut to as far west as California. And in its brief, Ari Breit argues that this court should ignore all the other subcontractors on the project because they're not connected to its contract. But the reality is that on a project of this scope, all the subcontractors' work is interconnected. So, for example, many of the subcontractors that performed on the project before Ari Breit directly impacted its work, and many of the subcontractors that this court should not ignore the fact that many of the players on this team are from outside the state of Illinois. Fourth, the end use of this project is directly connected with interstate commerce. And again, Ari Breit in its brief contends that this is really just an Illinois retail establishment that's going to be selling goods within the state of Illinois. But I think that really just characterizes the end use of a 204,000 square foot big box retail store owned by a multinational corporation. I think that's an end use that is directly connected with interstate commerce. Fifth, many of the Weisbilder staff who were involved in this project and who Ari Breit interacted with on a daily basis were from outside the state of Illinois that the project manager who it had the most contact with was an Illinois resident. But what they don't point out in their brief is that the four project superintendents that were involved in this job were all from outside the state of Illinois. And just to be clear, the project superintendents are the individuals whose job consists of a trailer on the project site. So these are the architects and engineers who designed this project, the ones who created the blueprints for Ari Breit's work, the instruction manual for how they were to perform were from outside the state of Illinois. And seventh and finally, Weisbilder's payment and performance bond surety is a New Jersey company. Now Ari Breit will contend that while Weisbilder's surety relationship really has no bearing on its subcontract, but the Weisbilder's payment obligations to all the subcontractors on the project. So if Ari Breit felt that it wasn't paid for what it was justly owed for all its work on the project, it could have asserted a payment bond claim directly against the New Jersey surety to recover payment. And so there is a direct connection between Ari Breit and the New Jersey surety. And that also happens to be one of the Now those seven factors that I just outlined, they provide an abundance of evidence of connections between the contracts and interstate commerce. And those connections are more substantial than perhaps any of the other cases we cited in our brief. So if these construction contracts don't implicate interstate commerce, then I would be hard pressed to think of any case, any construction contract within the state of Illinois that wouldn't implicate interstate commerce for the purposes of the Federal Arbitration Act. Now what Ari Breit is asking this court to do is to apply a very narrow view of the definition of interstate commerce. They're essentially asking this court to look through an extremely narrow lens at solely what their activities were on the project site to determine if interstate commerce was implicated. And Weiss's response to that is twofold. First, that approach is completely inconsistent with the Supreme Court's broad definition of interstate commerce that I've just outlined. And second, even if this court looks solely at Ari Breit's activities, you will find evidence of interstate commerce. But in the trial court, Ari Breit essentially conceded that point. They said, they argued that $82,000 was really just a trifling amount of interstate activity that the court should ignore. But in this court, they've actually made two motions trying to add new evidence that would have the effect of retracting that concession and essentially trying to prove that actually these materials came from within the state of Illinois. Now, as Weiss highlighted in its response to those motions, Illinois Supreme Court Rule 329 is not a vehicle to do what Ari Breit wants it to do, and that's to add new evidence that the trial court never considered for this court to consider in this appeal today. But even if this court were to grant those motions, I submit that that new evidence still demonstrates a connection with interstate commerce, because what Breit would be arguing is not that they didn't enter into a contract with a Wisconsin company. What they're saying is we did enter into a contract with a Wisconsin company, but actually the materials came from two different Illinois business locations of that company. But that doesn't change the fact that they did enter into a contract with a Wisconsin company, and then they ultimately sent $80,000 worth of payment across state lines to Illinois to pay that company for its work. And so, even under Ari Breit's theory of the narrow view of interstate commerce. From Illinois to Wisconsin. They sent the money. I'm sorry, did I misspeak? Yeah, they sent the payment from Illinois to the company in Wisconsin. And so, even under Ari Breit's narrow interpretation of interstate commerce, I believe that interstate commerce is implicated. Now, the second key point that I want to make today is that because the Federal Arbitration Act applies, it is the supreme law of the land, and it preempts over the Illinois Building and Construction Contract Act. Now, the Federal Arbitration Act requires that arbitration agreements be enforced according to their terms. So, if the parties have agreed to a Minnesota venue within their arbitration agreement, then the Federal Arbitration Act says that that portion must be enforced along with the rest of the agreement. On the other hand, we have an Illinois statute which literally conditions the enforceability of an arbitration agreement on the selection of an Illinois venue for the hearing. So, there is a conflict between the federal law and the state law. Unfortunately, the conflict is resolved by the supremacy clause of the United States Constitution. The Federal Arbitration Act, as a federal law, is the supreme law of the land. And to quote the Constitution, the judges in every state are bound thereby, notwithstanding any state laws to the contrary. So, the FAA, the Federal Arbitration Act, does preempt in this case. Now, in an attempt to save the Illinois statute from preemption, Ari Wright, in its brief, pretends that there really is no conflict between the Arbitration Act and the Illinois statute. What they're arguing is that the Illinois legislature is not prohibited under federal law from creating a state public policy that refuses to enforce an arbitration agreement unless it selects a venue within the state. Okay, here's two quick reasons why that isn't the case. Number one, the state public policy conflicts with the federal public policy. And I just want to point out that we've cited two cases within our brief in which statutes just like the one at issue here were found to be preempted by the Federal Arbitration Act. And in one of those cases, the court was actually discussing the statute that's at issue here. And secondly, both the United States Supreme Court and the Illinois Supreme Court have held that the Arbitration Act only allows arbitration agreements to be revoked on the basis of generally applicable contract offenses such as fraud, coercion, lack of consideration, and so forth. In this case, Ari Wright has not raised any of those defenses, so there is no basis to revoke the contract under state law. Now, I just want to briefly conclude today with a point of public policy. And that is when Congress enacted the Federal Arbitration Act back in 1925, it declared a liberal national policy in favor of enforcing arbitration agreements. So for the last 85 years, all interstate businesses, including construction companies, have been able to rely on that national policy as the supreme law of the land, so that their arbitration agreement would be enforceable anywhere they did business in the United States. The Arbitration Act was specifically intended to prevent any particular state from creating additional conditions or refusing to enforce arbitration agreements on the basis of laws that single out arbitration agreements for suspect status. So all Weiss-Gilders is asking this court to do in this case is to recognize that the Federal Arbitration Act remains the supreme law of the land and to enforce the arbitration agreements between the parties according to the agreed terms. So again, we respectfully request that this court overturn the trial court's order and compel arbitration as agreed to by the parties. Thank you. Thank you. Any questions? Thank you very much Mr. Klain and Ms. Edmonds. Good morning, your honors. May it please the court. My name is Ann Edmonds and I am here for the FLE, Ari White Construction. As a threshold consideration, the question of whether or not the Federal Arbitration Act applies needs to be considered. I would submit that the clause in discussion is a venue provision, not solely an arbitration provision. And under the terms of the FAA, it references exclusively arbitration. If in fact the FAA does not apply, then in fact it is conclusive that the Illinois Building Construction Act would apply in this instance and render the clause that they're seeking to enforce, the venue provision clause, submitting this construction project in Illinois to a court in Minnesota as void and against public policy. If in fact this court determines that the FAA does apply, then the first inquiry is whether or not there is interstate commerce. Weiss has not established how there is a substantial connection or a substantial impact on interstate commerce based on Ari White's subcontract with Weiss Builders. Well, is that the test? That is in fact the test that's articulated by the Supreme Court in many instances and specifically referencing the Wickard v. Filbord decision that they cite in their reply brief. And there needs to be a substantial impact on interstate commerce. Weiss has not demonstrated how Bright's contract with Weiss has in fact substantially impacted interstate commerce. Specifically, the analysis needs to be on the subcontract between Weiss and Ari Bright. In this instance, the activities that we cited in our briefs are all intrastate, starting with the fact that the subcontracts were signed and negotiated in Illinois. Weiss has an office in Rolling Meadows, a permanent office in Rolling Meadows, Illinois. The subcontracts identify the contractor as Weiss Builders with an address in Rolling Meadows, Illinois, not Minnesota. Three, the project and Bright's performance of the subcontracts was at the Farrell Road location in Lockport, Illinois. Four, pursuant to Exhibit E of the subcontracts, all contract billings were to be sent to Weiss at the Rolling Meadows office and all checks issued to Bright were sent to Bright from the Rolling Meadows office. Five, pursuant to Paragraph H of the subcontracts, Bright was to provide liability insurance to the project in accordance with the Illinois Insurance Code. Six, the change orders prepared by Weiss contained the Weiss Rolling Meadows, Illinois, address and Bright sent all requests for change orders to the Weiss Rolling Meadows, Illinois, address. Weiss is registered in Illinois with the Illinois Secretary of State, licensed to do business in Illinois. The equipment and materials used by Bright in the performance of the subcontractors were from vendors in Illinois and or were from Bright's open stock. And I will address at the conclusion of my argument, I'll save a couple of minutes to address the motion for leave to supplement the record as it relates to the subcontracts that Bright entered into. The project manager that was specifically assigned to the project for Weiss was Matt Peterson, who Weiss admits was an Illinois resident. The employees for Bright that worked on the project were all Illinois residents that worked for Bright, either as salaried employees or local union laborers. What Weiss has stated as interstate facts relate to its contract with Walmart, its contract with the architect and engineers, its own subcontract agreements. Bright was not a party to those agreements. And, in fact, the relationship as between Weiss and Bright, all of the activities took place in Illinois. The cases cited by Weiss do not support, in this instance, interstate commerce or are distinguishable. As noted, under the Wickard decision, which was a price control case dealing with wheat after or during World War II, the standard that's articulated is that there has to be a substantial impact on interstate commerce. The Milano v. Ann Hensler-Bush? Yes? Does the statutory language mean anything? I mean, the statute says involves commerce, as I recall. I don't know if it says any contract involving commerce. That is correct, Your Honor. You're referring to the FAA? Right. And it refers to, therefore, rising out of the contract or evidencing a transaction involving commerce to settle. Right. So the analysis, though, that's done is what, if this is interstate commerce, what needs to be established to prove that there is interstate commerce? And I would submit that Weiss has the burden in this instance, and they have not established how, in this instance, Breit's contract with Weiss has substantially impacted interstate commerce. If, in fact, or in addition to the fact that there is not interstate commerce that's been established, in my opinion, the FAA does not preempt the Illinois state statute that renders this type of venue provision void against public policy on the grounds that that statute itself is a general contract offense against public policy. And under the FAA, it clearly states that the states are entitled to control arbitration clauses as long as it is using the same grounds as exist at law or in equity for the revocation of any contract. Public policy is a general contract offense. The parties cannot agree to terms in a contract that's against public policy. So under those terms, 815 of the construction, excuse me, the Illinois Building and Construction Contract Act would not be preempted by the FAA. In addition, just the express language of 815 does not limit just arbitration provisions, but it refers to any type of dispute resolution or venue provision that would require the case to be transferred out of Illinois and to a different state. So for those reasons, it's also not targeted just to an arbitration provision and would similarly not be preempted. Because in the Arbitration Act? I'm sorry? I'm sorry. Right. Under the Illinois Building and Construction Contract Act in Illinois, it references more broadly than just arbitration provisions. And so it bars as against public policy any type of venue selection in a contract that would require the case to be litigated, arbitrated, mediated in some other out-of-state venue. So because it's not specifically directed just to arbitration, I would submit that it is not preempted by the FAA, which, assuming there's interstate commerce, can preempt a state statute if it's directed exclusively to arbitration. Well, then, isn't it just that thing that those contracts shall be enforceable under the federal statute, save for defenses that would apply to a law or equity at any contract? That is correct. Fraud, unconscionability. That is correct. And so I am following up on that, Your Honor. With respect to the Illinois Building and Construction Control Act, it states a public policy defense, which is applicable to any contract, not just a contract that has an arbitration provision. So one of the reasons why we cited that the FAA would not be preempted, even if there is interstate commerce, is because this is a broad contract defense. If I could back up a second. When you were talking about your test of substantial impact on interstate commerce, couldn't one argue with a real straight face that no single contract could ever have a substantial impact on interstate commerce? I would agree. I would agree in this instance. So if that's the test, wouldn't that swallow the rule? I mean, how could one contract have a substantial impact on interstate commerce in this context? But Weiss has not offered the test other than to say that, if I may, the suggestion that any kind of a relationship, regardless of how remote, any kind of a nexus that engages in something that's interstate automatically then triggers interstate commerce is broader than what the case law would suggest. The cases that Weiss has cited that relate to interstate commerce are fairly distinguishable. They deal with instances where they were looking at the contract where there was a substantial connection between interstate activities under that specific contract. So, for instance, in the American Home decision, the subcontractor entered into subcontracts with numerous out-of-state vendors. In FITE, that dealt with, without much analysis, an issue between the general contractor and the owner, not the subcontractor. In St. Lawrence Explosive, you're dealing with oil that's being shipped across state lines. Well, I mean, hasn't the Supreme Court said that the commerce power of Congress is the broadest power they've got? Well, it is broad. I don't disagree. I mean, isn't that where the civil rights legislation came from? In other words, there's some guy throwing somebody out of his restaurant in Mississippi or down south somewhere, and they said, you can't use the commerce power to stop him from doing that. And they really, it seems to me there's been no doubt that the commerce power is, if you want federal jurisdiction, go to the Commerce Clause because you can always find it there. It is broad, but bringing it back to what triggers acts that would rise to the level of interstate commerce, in this situation, we have to show some kind of substantial impact. And there simply isn't any as it relates to R.A. Bright's contract with Weiss. Even if your honors were not to accept the additional invoices that we have, for instance, with the steel supplies out of Wisconsin, which were all manufactured and shipped here in Illinois, that still wouldn't rise to a level of substantial impact on interstate commerce. There hasn't been a test offered by, well, actually Weiss has offered the test that we are to look at in the 1940s of the United States Supreme Court decision, Wicker. And they rely on that heavily in their reply brief. And if that is, in fact, the test that we are to use, then it is for Weiss to demonstrate how its contract with R.A. Bright substantially impacted interstate commerce. Because it did not, then the discussion ends there and the Illinois Building and Construction Contract Act would render this venue provision void as against public policy. In addition to the fact that because that's a general policy defense, it's not preempted by the FAA, it's a defense that would relate to any contract, we've also cited the foreign nonconvenience elements that we look at to determine whether or not a plaintiff's choice of venue is appropriate. Weiss has argued that because they didn't raise that as a defense, that that's irrelevant and not applicable. I would submit that their motion to transfer this case to Hennigan County in Minnesota is very similar to a foreign nonconvenience request. And under those tests, there's simply no connections, public or private, that would remotely require this matter to be transferred to Minnesota. The standards for foreign nonconvenience is that there's a substantial interest in the forum that's selected by the plaintiff. And that should not be disturbed except for weighty reasons. In most instances, the plaintiff's initial choice of forum will prevail. And in this instance, if you look at the public and private factors, they all militate in favor of Bright. We clearly comply with the venue statute, which is a general contract provision, I might add. It's not targeted just to arbitration. We also comply with, under the Illinois Mechanics Lien Act, the foreclosure portion of this case that's directed to Walmart is required to stay in the circuit court where the improvement took place. Well, Weiss doesn't argue that their motion ought to be construed as a motion to transfer from forum nonconvenience, do they? Well, Your Honor, they brought a motion to transfer from Will County to Hennigan County in Minnesota. And I don't know, I don't believe... It is a contract provision. It is a venue provision. That is correct. Your client agreed to that, right? The client did sign the contract. That is correct. I would submit that because it's void under the Illinois statute, that it's unenforceable. And we also have stated in our briefs, Your Honors, that Bright would not be in a position to negotiate this. I think the fact that Weiss has filed this appeal and is vigorously arguing and challenging this provision kind of underscores the fact that this was not a negotiated provision in the contract. But if you didn't negotiate it, that was your client's bad, right? Everything is negotiable. You need to walk away from it if you don't. This is an arm's length transaction, right? That is true. It is an arm's length transaction. It is, however, a provision in a contract that I would submit is unenforceable under the laws in Illinois. This is a national contract that Weiss uses, and in some states it may be enforceable. In this instance, for this particular project, I would argue that it's not enforceable. And I think it's that ridiculous long-arm reaching that we look at that sometimes even an agreed-upon venue provision will be unenforceable. If it's unreasonable, it has no connection to the litigation. Weiss Construction and Walmart in a foreclosure action, Walmart being here, of course. So you filed suit against a foreign corporation? That is correct, but the Walmart foreclosure portion of it has to stay in Illinois under the Mechanics' Lien Act, Section 9. Very briefly, Your Honors, Bright has brought a motion to amend the record. This was the issue of the materials that were sent to Wisconsin was first raised in the reply brief. We did not have the opportunity to file a SIR response to that. Obviously, the trial court didn't feel that it was relevant because she denied their motion. In any event, we would submit that the facts that were already in the record we would like to supplement under Rule 329. To clarify, I think it's also important because Weiss in their reply brief have indicated that there were false and misleading statements, and I think it's important that this court be aware of the fact that these supplies were, in fact, consistent with Mr. Bright's affidavit obtained and shipped within Illinois. So we would ask that our motion to supplement be granted in that regard. Where were the payments sent? The payments were sent to Wisconsin. Thank you. Thank you, Your Honor. Mr. McClain. Thank you, Your Honor. I just have a few points I want to reply to. First, with respect to the doctrine of forum nonconvenience, what Ari Bright is attempting to do here is to use that legal doctrine as a sword to go and attack Weiss Builder's and Ari Bright's mutually agreed arbitration provision. But that doctrine of law exists solely for the purpose of a shield that a defendant may raise if a plaintiff has chosen the inappropriate forum. And so I would submit that the whole doctrine of forum nonconvenience shouldn't have any bearing on this court's decision. And furthermore, I'd just like to point out that Weiss isn't here today arguing that Will County is not that it's an inconvenient forum, and we're not here arguing that based on Illinois venue statute they got the wrong court within Illinois for their case. What we're arguing is that the parties have an affirmative obligation to arbitrate under their mutually agreed subcontract agreements. Second, Ari Bright contends that the subcontract provision at issue in this case is it's really just a venue or a forum selection clause, and it's not an arbitration agreement. And I think it really defies logic to contend that an agreement stipulating that Weiss Builders may elect arbitration in Hennepin County is not, in fact, an arbitration agreement. Now, I'll concede that there are other provisions within the contract that might not be enforceable within the state of Illinois. If Weiss Builders had attempted or purported to elect to litigate a dispute in Hennepin County, then, yes, the Federal Arbitration Act doesn't apply, but that's not this case. And so counsel is arguing facts that just aren't relevant to your decision today, I would submit. Third, with respect to the argument that the state statute is a public policy that is a general contract offense, I just want to highlight that the Federal Arbitration Act, if it applies, the states can't condition the enforceability of an arbitration agreement on anything. And in addition to the two cases that I already mentioned in which state statutes very similar to the one at issue here were found to be preempted, another case that comes to mind is the Doctors Associates v. Casaroto decision, which is there was a state law at issue there that essentially said that an arbitration provision, to be enforceable, needed to be conspicuous. So it had to be on the front page of the contract or in bold or italics. It had to be something that would call the reader's attention to it. So that's not even an arbitration provision that bears on the substance of what the parties are agreeing to in terms of where they're going to arbitrate, under what rules they're going to arbitrate. And the Supreme Court said that that state statute was preempted by the Federal Arbitration Act. So no state legislature, I would submit, can create additional conditions that apply to the enforceability of an arbitration agreement when the Federal Arbitration Act applies. Now, with respect to counsel's argument that the appropriate standard in this case is whether or not there's a substantial connection between the contracts and commerce, I don't think that fairly characterizes the law. Counsel mentioned that the Wickard v. Filburn decision, which was from the 1940s, and really that case was one of a few cases in the 1940s in which the Supreme Court really broadly expanded the jurisprudence concerning what is interstate commerce. So to cite that particular case as the basis why this Court should look for a large amount of interstate commerce in order to trigger the Federal Arbitration Act, I don't think is appropriate. And also, I would point out that the precise language of the Arbitration Act says, just asks us to consider whether or not the contract involves interstate commerce. It doesn't ask the Court to consider, you know, how much. It just says, does the contract involve interstate commerce? And in this case, I think there are sufficient connections to show that it does. Counsel, you have one minute. Okay. And I'll just briefly respond to the contention that this was not a negotiated agreement or that Ari Breit didn't have the opportunity to raise this in contract negotiations. And I really think that that is just a bald assertion of fact because the record bears out that Ari Breit never even asked, never did so much as ask Weiss Builders to change that provision in the contract. And the record further bears out that Weiss Builders has negotiated that provision with other subcontractors in the past. And furthermore, I'd just like to point out, if you look at the dates that these two subcontracts were signed, there's a substantial period of time that lapsed between, first of all, when Weiss signed them and when Ari Breit signed them. And there's also a substantial period of time between when Ari Breit signed the first contract and when they signed the second subcontract. So presumably they have copies of these subcontracts in their office for an extended period of time to have more than sufficient time to read them and to raise the issue if they're not happy with the arbitration provision. But it never happened in this case. Well, but even if your client says that's non-negotiable, their remedy is to walk away from it if they don't like it rather than have the courts rewrite the contract. I agree with Your Honor 100%. And it just, those facts aren't even present in this case. So I just submit that, you know, there's no argument made by counsel that this is, for example, an adhesion contract. So I think that this is just a bald fact that has no bearing on the court's decision in this case. I have nothing further. Thank you. Thank you, Mr. McClain. Thank you both for your arguments today. We will take the matter under advisement and get back to you with a written decision.